IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | | |
|---|---|---|
| WHEATON EQUIPMENT COMPANY, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. CV 08-276-S-EJL |
| | ) | |
| v. | ) | **REPORT AND** |
| | ) | **RECOMMENDATION** |
| FRANMAR, INC., et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

This matter has been referred from the District Court for consideration of the pending

motions to dismiss. (Docket No. 18).  The Court has carefully reviewed the record, considered

the oral argument of counsel at the December 8, 2008 hearing, and now enters the following

Report and Recommendation pursuant to 28 U.S.C. § 636(b).

## I.   REPORT

### A.   <u>Background and Procedural History</u>[1]

Plaintiff Wheaton Equipment Company ("Wheaton") and Defendants Franmar, Inc.

("Franmar") and Franklin Tolbert ("Franklin") have been at odds in this Court before, as a result

of a soured joint venture formed for the primary purpose of acquiring and selling mining

equipment located at the mothballed Beartrack Mine near Salmon, Idaho. *See Wheaton Equip.*

---

[1] The parties do not dispute the basic facts concerning each Defendant's contacts with
Idaho; rather, they dispute whether those facts are sufficient to justify the exercise of personal
jurisdiction over Defendants in this case.

*Co. v. Franmar, Inc. & Franklin Tolbert*, CV03-220-S-BLW (D. Idaho) (*"Wheaton I"*),

Findings of Fact & Conclusions of Law (Docket No. 132), p. 1; Compl.,[2] ¶ 10 & Ex. F., § 21

(Docket No. 3); Second Reid Aff.,[3] Ex. A (Docket No. 20-2).  Franklin Tolbert was the president

and a shareholder of Franmar at the time, and either alone or with his wife, Martha Tolbert

("Martha"), owned Franmar.[4] *Wheaton I*, at p. 3; Second Reid Aff., Ex. C, p. 7 (Docket No. 20-

2); First Reid Aff., Ex. A, p. 5, Ls. 17-22 (Docket No. 14-2).

Each party incurred expenses and received income from the joint venture, but disagreed

with the other party's accounting of their respective income and expenses. *Wheaton I*, at p. 1.

Having failed to agree, Wheaton filed suit against Franmar and Franklin on May 23, 2003.

Clyde A. Faatz, a lawyer with the Colorado law firm Hamilton and Faatz, a Professional

Corporation ("Hamilton & Faatz"),[5] was admitted to the District of Idaho court *pro hac vice* to

---

[2] Although the Verified Complaint referred to in this citation is listed as an "Amended Complaint" on the docket sheet (Docket No. 3), the Complaint was not amended. The first item labeled "Complaint" on the docket (Docket No. 1) was a memorandum, apparently filed in error, and not a complaint.

[3] Counsel for Plaintiff, James Reid, submitted two affidavits in opposition to Defendants' motions. The Affidavit of James Reid in Opposition to Defendant Hamilton & Faatz's Motion to Dismiss (Docket No. 14) will be referred to throughout as "First Reid Aff." The Affidavit of James Reid in Opposition to Defendants Franmar, Inc., Franklin Tolbert, Martha Tolbert and Tolbert LLC's Motion to Dismiss (Docket No. 20-2) is referred to as "Second Reid Aff."

[4] There is conflicting information in the record regarding whether Franklin Tolbert was the "only stockholder" of Franmar. *See* First Reid Aff., Ex. A, p. 5, Ls. 17-22 (Docket No. 14-2). Franklin Tolbert provided deposition testimony to this effect, but also stated in another deposition that Martha Tolbert is a shareholder in Franmar. Second Reid Aff., Ex. C., p. 7 (Docket No. 20-2). Martha also is listed as an initial director and incorporator of Franmar. *See id.* at Ex. D.

[5] Hamilton & Faatz is now Hamilton Faatz and Waller, PC. Faatz Aff., ¶ 1 (Docket No. 11-2).

REPORT AND RECOMMENDATION - 2

represent Franmar and Franklin Tolbert in *Wheaton I*. Faatz Aff., ¶ 6 (Docket No. 11-2).  On

March 9, 2006, Chief District Judge B. Lynn Winmill entered judgment in *Wheaton I*, requiring

Franmar[6] to pay Wheaton $340,186.32 and Wheaton to pay Franmar $12,245.89.  *Wheaton I*,

Judgment (Docket No. 133).

Just a few weeks later, on March 23, 2006, Franmar filed a voluntary Chapter 11

bankruptcy petition in Colorado.  Compl., ¶ 22 (Docket No. 22); *In re Franmar*, Case No. 06-

11194-SBB (Bankr. Colo.).  However, a different Colorado law firm—Kutner, Miller—

represented Franmar in the bankruptcy proceedings.  First Reid Aff., Ex. A, p. 28 (Docket No.

14-2).

Sometime around June 14, 2006, while the bankruptcy action was pending, Franklin and

Martha formed a new company in Texas.  That company, named Tolbert Equipment Sales, LLC

("Tolbert LLC"), engages in the same type of business as Franmar had conducted.  Compl. at ¶

28; Tolbert LLC Aff.,[7] ¶¶ 2-3 (Docket No. 15-5); Second Reid Aff., Ex. C, p. 15 & Ex. F, p. 18

(Docket No. 20-2).  The record is bare as to whether or not Hamilton & Faatz assisted Franklin

and Martha in forming Tolbert LLC.

On November 22, 2006, the bankruptcy court dismissed Franmar's filing, and in doing so

held that the petition had been filed in bad faith.  Compl., Ex. G, Findings of Fact & Conclusions

of Law, p. 3.  After dismissal of the bankruptcy action, Judge Winmill awarded attorney's fees to

Wheaton in *Wheaton I* and, on May 31, 2007, entered an Amended Judgment increasing the

---

[6]  Wheaton obtained judgment in its favor only against Franmar; no judgment was
entered against Franklin Tolbert as an individual.  Franklin Tolbert Aff., ¶ 3 (Docket No. 15-3).

[7]  This refers to the Affidavit of Franklin Tolbert as the "principal" of Tolbert LLC.

REPORT AND RECOMMENDATION - 3

amount owed by Franmar to Wheaton to $424,835.02. *Wheaton I*, Am. Judgment (Docket No. 176). Franmar has made no payment toward satisfying this Amended Judgment. *See* Compl., ¶ 20. However, shortly after the bankruptcy court dismissed Franmar's case, Franmar disposed of all the property listed in its bankruptcy filing. *Id.* ¶¶ 26-32. Then, on May 21, 2008, Franmar voluntarily and completely dissolved under Colorado law. Franmar Aff.,[8] ¶ 3 (Docket No. 15-6). Wheaton alleges Franmar received about $750,000 from the asset disposal, which was less than the $1,140,000 total value of the assets listed on Franmar's bankruptcy schedules. Compl. at ¶ 32.

Wheaton contends that the disposed assets included two assets sold by Franmar to Franklin personally. Compl. at ¶¶ 27, 29. Franklin allegedly transferred to his wife Martha one of these assets, real property valued at $200,000 for which he paid Franmar approximately $100,000. In addition, Wheaton alleges that Franmar used $580,000 from the asset sale proceeds to pay off a credit line owed to the Community Bank of the Rockies by Franmar, upon which Franklin also had personal liability and which was secured by the Tolberts' personal residence. *Id.* at ¶ 26.

Franmar also conveyed a rock crusher valued at $175,000 to Hamilton & Faatz to satisfy the legal fees owed by Franmar and Franklin. *Id.* ¶ 30 & Ex. F (Statement of Financial Affairs at Ex. B(25)). Hamilton & Faatz sold the crusher to a third party for approximately $80,000. *Id.*; *see also* Faatz Aff., ¶ 10 (Docket No. 11-2); First Reid Aff., Ex. A, pp. 28-29, 48 (Docket No. 14-2).

---

[8] This reference is to the Affidavit of Franklin Tolbert as the "principal" of Franmar.

REPORT AND RECOMMENDATION - 4

Those transfers and the failure to pay anything on the *Wheaton I* judgment landed Franmar and Franklin back in Idaho federal court. On July 1, 2008, over a year after the Amended Judgment was entered in *Wheaton I*, Wheaton filed the present action asserting a claim for fraudulent conveyance against all Defendants except Tolbert LLC, a civil conspiracy claim against all Defendants, and a breach of duty claim against Franklin Tolbert. Wheaton alleges generally that Franmar transferred its assets with the intent to hinder, delay, or defraud Wheaton in an effort to avoid Wheaton's execution and levy upon the assets to satisfy the Amended Judgment. Compl., ¶¶ 33, 35. Wheaton also seeks to pierce the corporate veil of both Franmar and Tolbert LLC to recover against the personal assets of Franklin and Martha Tolbert. *Id.* at ¶¶ 57-67.

Two motions have been filed, through which each of the Defendants seeks dismissal of this case under Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction. (Docket Nos. 11, 15). Defendant Hamilton & Faatz also moves to dismiss for improper venue. The Court has diversity subject matter jurisdiction under 28 U.S.C. § 1332.[9]

**B.    Standards of Law - Motions to Dismiss**

Wheaton bears the burden of demonstrating that personal jurisdiction is proper. *Rio Props., Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1019 (9th Cir. 2002). Defendants' motions are

---

[9]  Plaintiff Wheaton is an Idaho corporation with its principal place of business in Nampa, Idaho. Defendant Franmar is a Colorado corporation with its principal place of business in Antonito, Colorado. Defendants Franklin Tolbert and Martha Tolbert are residents of Texas. Franklin Tolbert Aff., ¶ 2 (Docket No. 15-3); Martha Tolbert Aff., ¶ 2 (Docket No. 15-4). Defendant Tolbert, LLC is a Texas limited liability company with its principal place of business in Nacogdoches, Texas. Defendant Hamilton & Faatz is a Colorado corporation with its principal place of business in Denver, Colorado. The damages alleged exceed $75,000. Compl., ¶¶ 1-10 (Docket No. 3). *See also* Memo. in Supp. of Franmar, et. al., Mot. to Dismiss, p. 6 (Docket No. 15-2); Compl., ¶¶ 1-10.

based on written materials rather than on an evidentiary hearing. Accordingly, Wheaton need only make a prima facie showing of jurisdictional facts in its pleadings and affidavits. *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004). Although Wheaton cannot rest on the bare allegations of the complaint, uncontroverted allegations in the complaint must be taken as true and "conflicts between the parties over statements contained in affidavits must be resolved in [Wheaton's] favor." *Id.*

**C.    Standards of Law - Personal Jurisdiction**

This Court's power to exercise personal jurisdiction over non-resident defendants is defined and limited by both Idaho's long-arm statute and the Due Process Clause of the United States Constitution. *Dole Food Co., Inc. v. Watts*, 303 F.3d 1104, 1110 (9th Cir. 2002); *Sher v. Johnson*, 911 F.2d 1357, 1360 (9th Cir. 1990). In other words, for the Court to exercise *in personam* jurisdiction over the Defendants, (1) Idaho's long-arm statute must give the Court authority to exercise jurisdiction, and (2) the Court's exercise of jurisdiction under that statute must meet Constitutional standards. *National Union Fire Ins. Co. of Pittsburgh v. Aerohawk Aviation, Inc.*, 259 F. Supp. 2d 1096, 1101 (D.Idaho 2003) (citing *Data Disc Inc. v. Systems Tech. Assocs., Inc.*, 557 F.2d 1280, 1286 (9th Cir. 1997)).

This Court, sitting in diversity, must follow the Idaho Supreme Court's interpretation of Idaho state law. *National Union Fire*, 259 F. Supp. 2d at 1101. In *Lake v. Lake*, 817 F.2d 1416, 1420 (9th Cir. 1987), the Ninth Circuit determined that the Idaho legislature, in enacting Idaho's long-arm statute, I.C. § 5-514, "intended to exercise all the jurisdiction available to the State of Idaho under the due process clause of the United States Constitution." *Id.* at 1420. The Idaho Supreme Court seemed to confirm this understanding in later cases. *See, e.g., Houghland Farms*

REPORT AND RECOMMENDATION - 6

*v. Johnson*, 119 Idaho 72, 75-76, 803 P.2d 978, 981-82 (1990). However, "more recently, the Idaho Supreme Court has, without commenting on this precedent, instituted a two-part test for resolving long-arm jurisdiction questions." *Reyerson v. Ollennu*, Case No. CV06-525-E-BLW, 2007 WL 1891823, *1 n.1 (D.Idaho June 28, 2007).

The Idaho Supreme Court now first determines whether a defendant's conduct falls within the long-arm statute, and then considers whether exercising jurisdiction would comport with the Due Process Clause. *Id.* "In two cases, the Idaho Supreme Court has held that the defendant's conduct did fall within I.C. § 5-514, but that jurisdiction could not be exercised consistently with the Due Process Clause." *Id.* (citing *Smalley v. Kaiser*, 130 Idaho 909, 950 P.2d 1248 (1997); *Saint Alphonsus Reg'l Med. Ctr. v. State of Washington*, 123 Idaho 739, 852 P.2d 491 (1993)). *See also Blimka v. My Web Wholesaler, LLC*, 143 Idaho 723, 726, 152 P.3d 594, 597 (2007). "These decisions imply that I.C. § 5-514 reaches beyond the limits of due process, and that the Idaho Supreme Court must use the Due Process Clause to rein-in the statute's grasp." *Reyerson*, Case No. CV06-525-E-BLW, 2007 WL 1891823 at *1 n.1. Hence, although the nature of the analysis employed under Idaho law as described by the Ninth Circuit's reading of Idaho Code § 5-514 in *Lake* may have been revised, the ultimate issues remain the same—"the Due Process Clause sets the limit," but the Idaho Supreme Court's two-part test "recognizes that the reach of the statute is not identical with the reach of the Due Process Clause." *Id.*

## 1.    Idaho's Long-Arm Statute

Idaho's long-arm statute is found at Idaho Code §5-514. It reads, in pertinent part:

> Any person, firm, company, association or corporation, whether or
> not a citizen or resident of this state, who in person or through an
> agent does any of the acts hereinafter enumerated, thereby submits
> said person, firm, company, association or corporation, and if an
> individual, his personal representative, to the jurisdiction of the
> courts of this state as to any cause of action arising from the doing
> of any of said acts:
>
> (a) The transaction of any business within the state which is
> hereby defined as the doing of any act for the purpose of realizing
> pecuniary benefit or accomplishing or attempting to accomplish,
> transact or enhance the business purpose or objective or any part
> thereof of such person, firm, company, association or corporation;
> [or]
>
> (b) The commission of a tortious act within the state . . .

Importantly, the Idaho Supreme Court has deemed Idaho Code § 5-514 as "remedial legislation designed to provide a forum for Idaho residents and should be liberally construed to effectuate that purpose." *Blimka*, 143 Idaho at 726, 152 P.3d at 597 (citing *St. Alphonsus Reg'l Med. Ctr.*, 123 Idaho at 743, 852 P.2d at 495).

## 2.    Due Process Requirements

Even if a non-resident defendant is netted by the Idaho long-arm statute, such defendant is still entitled to due process protections which, in some instances, prevent the exercise of personal jurisdiction over that defendant. Specifically, due process requires that the foreign defendant have certain "minimum contacts" with the forum state such that the traditional notions "'of fair play and substantial justice'" are not offended. *Sher*, 911 F.2d at 1361 (quoting *International Shoe Co. v. Washington*, 326 U.S. 310, 320 (1945)). Additionally, "the defendant's conduct and connection with the forum State must be such that the defendant should reasonably anticipate

REPORT AND RECOMMENDATION - 8

being haled into court there." *Id.* (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980) (internal quotation marks omitted)). The focus is primarily on "the relationship among the defendant, the forum, and the litigation." *Shaffer v. Heitner*, 433 U.S. 186, 204 (1977).

States may exercise general or specific jurisdiction over non-resident defendants, consistent with due process protections. *See Helicopteros Nacionales de Colombia S.A. v. Hall*, 466 U.S. 408, 414-15 (1984). General jurisdiction exists if a defendant's contacts with the forum state are "continuous and systematic," *Helicopteros*, 466 U.S. at 416, and the exercise of jurisdiction satisfies "traditional notions of fair play and substantial justice." *Reebok Int'l Ltd. v. McLaughlin*, 49 F.3d 1387, 1391 (9th Cir. 1995). *See also Perkins v. Benguet Consol. Mining Co.*, 342 U.S. 437, 445, 447 (1952); *Lake*, 817 F.2d at 1420. However, "[t]he standard for establishing general jurisdiction is fairly high and requires that the defendant's contacts be of the sort that approximate physical presence." *Bancroft & Masters, Inc. v. Augusta Nat'l Inc.*, 223 F.3d 1082, 1086 (9th Cir. 2000) (internal citation and quotation marks omitted); *see also Gates Learjet Corp. v. Jensen*, 743 F.2d 1325, 1331 (9th Cir. 1984). Factors considered in determining general jurisdiction include: "whether defendant makes sales, solicits or engages in business in the state, serves the state's markets, designates an agent for service of process, holds a license, or is incorporated there." *Bancroft & Masters*, 223 F.3d. at 1086.

Specific jurisdiction, as the term implies, is more focused upon a particular connection with the forum state, for instance, a particular business relationship or the commission of a tort. In determining whether specific jurisdiction exists, a three-part analysis is employed:

> (1) the non-resident defendant must purposefully direct his
> activities or consummate some transaction with the forum or

REPORT AND RECOMMENDATION - 9

> resident thereof; *or* perform some act by which he purposefully
> avails himself of the privileges of conducting activities in the
> forum, thereby invoking the benefits and protections of its laws; (2)
> the claim must be one that arises out of or relates to the defendant's
> forum-related activities; and (3) the exercise of jurisdiction must
> comport with fair play and substantial justice, *i.e.,* it must be
> reasonable.

*Dole Food*, 303 F.3d at 1104.

Wheaton bears the burden of satisfying the first two prongs of the specific jurisdiction test, i.e., purposeful availment/direction and arising out of forum-related activities. *Sher,* 911 F.2d at 1361. If Wheaton fails to satisfy either of these prongs, personal jurisdiction is not established in the forum state. If Wheaton succeeds in satisfying both of the first two prongs, the burden then shifts to the Defendants to "present a compelling case" that the exercise of jurisdiction would not be reasonable. *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 476-78 (1985).

The first prong of the specific personal jurisdiction test may be met in tort cases where an action is both aimed at and has an effect in the forum. *Panavision Int'l, L.P. v. Toeppen*, 141 F.3d 1316, 1322 (9th Cir. 1998). This is known as "purposeful direction." *See Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199, 1206 (9th Cir. 2006) (en banc) (explaining that the first element for specific jurisdiction "may be satisfied by purposeful availment of the privilege of doing business in the forum; by purposeful direction of activities at the forum; or by some combination thereof"); *Menken v. Emm*, 503 F.3d 1050, 1057 (9th Cir. 2007).

As the Ninth Circuit explained in *Schwarzenegger*, 374 F.3d at 802:

> We often use the phrase 'purposeful availment,' in shorthand
> fashion, to include both purposeful availment and purposeful
> direction . . ., but availment and direction are, in fact, two distinct

REPORT AND RECOMMENDATION - 10

> concepts. A purposeful availment analysis is most often used in
> suits sounding in contract . . . A purposeful direction analysis, on
> the other hand, is most often used in suits sounding in tort.

Here, because Wheaton's claims sound primarily in tort, the purposeful direction analysis

will be applied at the first step of the test for specific jurisdiction.

Significantly, the next prong of the test—that of establishing sufficient minimum contacts

to meet due process requirements—is not an unending exercise. Due process concerns are

satisfied as to every claim for relief raised by Wheaton if sufficient contacts exist as to any one

claim (for each Defendant) when such claims, as they do in this case, "arise from a common

nucleus of fact." *CE Distrib., LLC v. New Sensor Corp.*, 380 F.3d 1107, 1112 -1113 (9th Cir.

2004) (explaining that "under the doctrine of pendent personal jurisdiction, a defendant may be

required to defend a claim for which there is no independent basis of personal jurisdiction so long

as it arises out of a common nucleus of operative facts with a claim in the same suit over which

the court does have personal jurisdiction") (citation and internal quotation marks omitted).

**D.     No General Jurisdiction Exists as to Any Defendant**

As an initial matter, the Court finds that the "general jurisdiction" means of satisfying due

process requirements does not apply as against any of the Defendants in this case. There is

simply nothing in this record that comes close to establishing a "continuous and systematic"

relationship with Idaho. Additionally, Defendants' recent activities are not "of the sort that

approximate physical presence," nor do they otherwise rise to the level of contacts necessary for

general jurisdiction. *See Bancroft & Masters*, 223 F.3d at 1086.

REPORT AND RECOMMENDATION - 11

**E.** **Specific Jurisdiction Analysis and Rulings as to Defendants**
**Franmar & Franklin Tolbert**

Wheaton asserts that Defendants Franmar and Franklin are subject to personal jurisdiction

in Idaho because they, "on one or more occasions, have transacted business within the State of

Idaho." Compl., ¶ 13. Franmar responds that personal jurisdiction does not exist because it had

no contact with Idaho since the conclusion of *Wheaton I* on May 31, 2007, and it was in the

normal course of its corporate windup that it disposed of various real and personal property, none

of which was ever located in Idaho or conveyed to or from any person in Idaho. Franmar Aff., ¶¶

4-7 (Docket No. 15-6). Franklin similarly argues that his contacts with Idaho are "limited to

being haled into court in 2003 to defend against a breach of contract case arising out of business

dealings" between Wheaton and Franmar. Memo. in Supp. of Franmar, et. al., Mot. to Dismiss,

pp. 3, 11-12 (Docket No. 15-2); Franklin Tolbert Aff., ¶¶ 3-4 (Docket No. 15-3). Although

Wheaton obtained a partial judgment in its favor against Franmar, no judgment was entered

against Franklin as an individual. Franklin Tolbert Aff. at ¶ 3.

In short, Franmar and Franklin argue that the 2003 lawsuit is "unrelated" to the instant

case and their only contact with Idaho is limited to their defense and counterclaim in that lawsuit.

*See, e.g.*, Memo. in Supp. of Franmar, et. al., Mot. to Dismiss, pp. 5, 9 (Docket No. 15-2);

Franmar, et al., Reply, p. 2 (Docket No. 22). Franmar correctly argues that a defendant's

submission to jurisdiction in one lawsuit does not constitute consent to jurisdiction in a different

action. *See* Memo. in Supp. of Franmar, et. al., Mot. to Dismiss, p. 9; *Dow Chem. Co. v.*

*Calderon*, 422 F.3d 827, 835-36 (9th Cir. 2005). However, the initial lawsuit between Wheaton

and Franmar is inescapably related to the present lawsuit. The *Wheaton I* judgment created a

REPORT AND RECOMMENDATION - 12

judgment debtor/creditor relationship between Wheaton and Franmar and left Franklin, as the

president and principal shareholder of Franmar, to determine whether and how to satisfy the debt.

Further, the "winding-up" of the corporate affairs that Franmar contends was a "normal" event is

not a normal event for a business enterprise intending to continue doing business as a going

concern. Here, given the milieu of facts alleged (and taken as alleged, if uncontradicted) by

Wheaton, it is more reasonable to conclude that Franmar was "winding-up" its corporate affairs

*because of* the *Wheaton I* judgment and that but for such judgment, Franmar would have

continued to do business, in the same manner, as it had prior to the entry of the judgment. Such a

conclusion is buttressed by the fact that Franklin contemporaneously formed a new company

(Tolbert, LLC) to conduct the same type of business going forward.

1. **Idaho Code § 5-514(a) - Franmar and Franklin Tolbert
   have Transacted Business in Idaho**

Idaho Code § 5-514(a) provides for long-arm jurisdiction "as to any cause of action

arising from . . . [t]he transaction of any business within the state which is hereby defined as the

doing of any act for the purpose of realizing pecuniary benefit or accomplishing or attempting to

accomplish, transact or enhance the business purpose or objective or any part thereof of such

person [or company]." Here, Franmar, through its principal shareholder and president Franklin[10],

engaged in business in Idaho— a joint venture with Wheaton, involving both a personal presence,

---

[10] Franklin Tolbert's contacts with Idaho on behalf of Franmar may be attributed to him
in his individual capacity. *See Davis v. Metro Prods., Inc.*, 885 F.2d 515, 522 (9th Cir. 1989)
(explaining that a state's "long-arm statute may, consistent with constitutional due process, allow
assertion of personal jurisdiction over officers of a corporation as long as the court finds those
officers to have sufficient minimum contacts with [the forum state]"); *China Nat'l Chem. Const.
Chongqing Co. v. Kit Kung*, Civil No. 06-771-ST, 2007 WL 433196, *7 (D.Or. Feb. 1, 2007)
(applying an alter ego theory).

REPORT AND RECOMMENDATION - 13

on various occasions, in Idaho and a number of other business contacts through means of
communication to and from Idaho. An affidavit submitted by Wheaton details several Idaho-
related contacts by Franmar and Franklin during their business relationship with Wheaton. *See*
Second Reid Aff., Ex. B[11] (Docket No. 20-2). The question is whether the claims for relief
asserted in this case against Franmar and Franklin arise from that business. The answer is yes.

As explained above, the two cases are not unrelated. The judgment in *Wheaton I* made
Franmar a judgment debtor to Wheaton. It is this relationship of creditor/debtor that forms the
basis for the present causes of action. Wheaton alleges here that Franmar transferred all of its
assets with the intent to hinder, delay, or defraud Wheaton in an effort to avoid Wheaton's
execution and levy upon the assets to satisfy the *Wheaton I* judgment. Compl., ¶¶ 33, 35. Thus,
Franmar's and Franklin's business contacts in Idaho are part of a continuing relationship between
Wheaton and these Defendants—a relationship that has imposed various obligations on each. In
light of these continuing obligations, and because the judgment is for money owed to Wheaton
from the joint venture's profits, it is appropriate to consider these Defendants' contacts with Idaho
in proposing, negotiating, creating, and working on the joint venture. Those facts, which are
summarized at the beginning of this decision and detailed more fully in Judge Winmill's decision
in *Wheaton I*, trigger the long-arm jurisdiction found at Idaho Code § 5-514(a).

---

[11] Exhibit B is the Affidavit of Larry Wheaton filed in *Wheaton I* to support Wheaton's
opposition to Defendants' Motion to Dismiss or Change Venue.

REPORT AND RECOMMENDATION - 14

2.     **Idaho Code § 5-514(b) - Wheaton has Sufficiently Alleged that Franmar and Franklin Tolbert have Caused Tortious Injury in Idaho**

Alternatively, it is recommended that the District Court exercise jurisdiction under Idaho Code § 5-514(b). It is sufficient to allege that an injury occurred in Idaho in a tortious manner to invoke the tortious act provision of Idaho Code § 5-514(b). *See St. Alphonsus*, 123 Idaho at 743, 852 P.2d at 495. The tortious act need not take place in Idaho; rather, it is enough that the injury is alleged to have occurred in Idaho. *Doggett v. Electronics Corp. of Am.*, 93 Idaho 26, 454 P.2d 63 (1969) (products liability/negligence case); *Blimka*, 143 Idaho at 727, 152 P.3d at 598 (finding fraud allegation sufficient to invoke the tortious act language).

Wheaton alleges that Franmar transferred all of its assets to "insiders" for less than a reasonably equivalent value "with actual intent to hinder, delay or defraud Wheaton" and that Franklin received assets from Franmar and "did not take in good faith and/or for reasonably equivalent value." Compl., ¶¶ 33-50. These statements, along with the other allegations in the Complaint and information in the record, sufficiently allege that Defendants Franmar and Franklin Tolbert intentionally engaged in actions (even if they occurred in Colorado and/or Texas) to interfere with Wheaton's ability to recover the judgment debt—actions that injured Wheaton in Idaho. Accordingly, the long-arm jurisdiction provided under Idaho Code § 5-514(b) is also satisfied.

3.     **Specific Jurisdiction**

The analysis for Defendants Franmar and Franklin then turns upon whether or not jurisdiction can be exercised consistent with due process protections. As described *supra*, the Ninth Circuit applies a three-part test to determine if the exercise of jurisdiction meets the due

REPORT AND RECOMMENDATION - 15

process requirements. The first prong of this test requires that the non-resident defendant have purposefully directed his activities or consummated some transaction with the forum or resident thereof ("purposeful direction"); *or* performed some act by which he purposefully avails himself of the privileges of conducting activities in the forum, thereby invoking the benefits and protections of its laws ("purposeful availment"). *Dole Food*, 303 F.3d at 1104.

> a.    *Purposeful Direction*

The purposeful direction analysis is used to evaluate whether specific jurisdiction exists where, as here, a case sounds, at least in part, in tort. *See Harris Rutsky*, 328 F.3d at 1131 (citing *Brainerd*, 873 F.2d at 1259-60 as a case in which an Arizona court had personal jurisdiction over Canadian defendant alleged to have intentionally interfered with contract in Arizona, and *Bancroft & Masters, Inc.*, 223 F.3d at 1087 for the principle that the "express aiming" requirement is satisfied when a defendant is "alleged to have engaged in wrongful conduct targeted at plaintiff whom defendant knows to be resident of forum state").

The "effects" test for purposeful direction requires that the Defendants allegedly have (1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the Defendants knows is likely to be suffered in the forum state. *Schwarzenegger*, 374 F.3d at 803 (citing *Dole Food*, 303 F.3d at 1111 (internal citations omitted)).[12]

---

[12] If this analysis seems familiar, it is. The Idaho Supreme Court also uses this test, which originated in *Calder v. Jones*, 465 U.S. 783 (1984), to evaluate whether exercising personal jurisdiction in a tort case comports with traditional notions of fair play and substantial justice. *See Blimka*, 143 Idaho at 727-28, 152 P.3d at 598-99 and discussion of long-arm jurisdiction over Franmar and Frankin, *supra*.

REPORT AND RECOMMENDATION - 16

Wheaton's claims relate to Franmar's alleged fraudulent transfers of property and Franklin's direction of the asset disposal. Wheaton alleges these transfers were made "with actual intent to hinder, delay or defraud Wheaton." Compl., ¶¶ 33-50. Thus, the conduct as alleged amounts to intentional acts aimed at Wheaton in Idaho, in that (as alleged by Wheaton), the transfers were made intentionally, inescapably were aimed at Idaho (where Wheaton, the judgment debtor is located) and directly affected Wheaton's ability to be paid on its judgment, to Wheaton's detriment in Idaho.

Alternatively, both Colorado and Idaho have enacted fraudulent transfer statutes based on the Uniform Fraudulent Transfer Act ("UFTA"). Although Wheaton does not specify in its Complaint which of the two Acts it seeks relief upon, for these purposes there is no distinction. Under each state's version of UFTA, a creditor may obtain a judgment for the value of an asset transferred by a debtor (1) with "intent to hinder, delay, or defraud any creditor of the debtor," or (2) "without receiving a reasonably equivalent value in exchange for the transfer." Colo. Rev. Stat. Ann. § 38-8-105; Idaho Code § 55-913(1). If properly proved, judgment may be obtained against the first transferee of the asset (which here includes Franklin and Hamilton & Faatz), the person for whose benefit the transfer was made (which includes Franklin and Martha), or any subsequent transferee other than a good faith transferee (which may include Martha with respect to the real property transfer). *See* Colo. Rev. Stat. Ann. § 38-8-109; Idaho Code § 55-917; *Leverage Leasing Co. v. Smith*, 143 P.3d 1164, 1166 (Colo.App. 2006).

Other courts have found purposeful direction where defendants were alleged to have engaged in a fraudulent transfer of assets in another state to avoid a debt owed to a plaintiff in the forum state. For example, in *Air Products and Controls, Inc. v. Safetech Intern., Inc.*, 503 F.3d

REPORT AND RECOMMENDATION - 17

544 (6th Cir. 2007), the Sixth Circuit found that a non-resident corporation's contact with Michigan was "enhanced by its conduct which, at least as alleged, was intentionally directed to cause harm to a Michigan resident."[13] *Id.* at 552-53.

The plaintiff in *Air Products* alleged that the defendant corporation, along with its president and owner, a Kansas resident, "knew that it owed a judgment debt to [plaintiff] *at the time* it engaged in the allegedly fraudulent transfer, and . . . that [d]efendants transferred the assets with the intent to hinder, delay, or defraud" plaintiff in violation of the relevant fraudulent transfers act. *Id.* at 553. The Court explained that defendants "also undoubtedly knew that [plaintiff] had its principal place of business in Michigan, and that the focal point of its actions and the brunt of the harm would be in Michigan." *Id. See also Fifth Third Bank v. Gentile*, Case No. 1:08 CV 52, 2008 WL 2390780, *7 (N.D.Ohio June 9, 2008) (finding personal jurisdiction existed where "the effect of the alleged fraudulent transfer was to harm a bank located in Ohio attempting to collect on a Guaranty entered into in Ohio"). Although not binding authority, the Sixth Circuit's decision in *Air Products* is persuasive.

As in *Air Products*, Franmar and its principal shareholder, Franklin, knew that Franmar owed Wheaton a significant amount on a judgment at the time that Franmar, acting at the direction of Franklin, made several transfers of property alleged to be fraudulent and alleged to be made for the sole purpose of hindering, delaying, or defrauding Wheaton in its efforts to collect

___

[13] The Sixth Circuit first found purposeful availment resulting from a nine-year business relationship between the plaintiff and defendants that involved several hundred contacts through telephone, email, facsimile, and ordinary mail correspondence for purposes of discussing and placing orders for goods. The court then went on to consider the "effects test," noting that although this test "has been limited, the existence of intentional tortious conduct nonetheless 'enhances' a party's other contacts with the forum state for purposes of a purposeful availment analysis." *Air Products*, 503 F.3d at 552-53.

REPORT AND RECOMMENDATION - 18

on the judgment. Such is the crux of a fraudulent transfer claim. Moreover, the parties in *Air Products* had a past business relationship that led to the judgment debt at issue in the fraudulent transfer. 503 F.3d at 478. Both such facts exist here: Wheaton and Franmar, directed by Franklin, entered into a joint venture. Their business relationship soured, a lawsuit ensued, and a judgment was entered, most significantly against Franmar. *See Wheaton I, supra.*

Considering that the first element for specific jurisdiction "may be satisfied by purposeful availment of the privilege of doing business in the forum; by purposeful direction of activities at the forum; *or by some combination thereof,*" *Yahoo! Inc.*, 433 F.3d at 1206 (9th Cir. 2006) (en banc) (emphasis in original), the past business relationship between Franmar, Franklin, and Wheaton, combined with Plaintiff's allegation that Franklin directed the activities of Franmar's property disposal knowing of the unpaid judgment, rise to the level of purposeful direction sufficient to meet the first prong of the specific jurisdiction test.

    *b.* *Purposeful Availment*

Although purposeful direction is the test typically used to evaluate specific jurisdiction in tort cases, the parties primarily discuss the "purposeful availment" test in their briefs. Purposeful availment involves a qualitative evaluation of the defendant's contact with the forum state. Specifically, the Court examines the record for "'some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.'" *Lake*, 817 F.2d at 1421 (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)). Here, Defendants Franmar and Franklin engaged in a joint venture with Wheaton to sell equipment from the Beartrack Mine in Idaho.

REPORT AND RECOMMENDATION - 19

Defendants argue that these actions formed the basis for *Wheaton I* and are unrelated to Wheaton's claims in the present suit. However, it is Franmar's failure to pay amounts owing to Wheaton from the joint venture that led to the *Wheaton I* judgment, and Franmar's failure to satisfy this judgment at issue in the present case. Without such prior Idaho-related business activities, there would be no judgment and no dispute over whether Wheaton's rights were being violated in regard to that judgment.

c.    *Arising Out of Forum-Related Conduct*

The second requirement for specific jurisdiction is that the acts which constitute purposeful direction/availment must also be the acts that give rise to the lawsuit. *Dole Food*, 303 F.3d at 1088. *See also Rio Props., Inc. v. Rio Int'l. Interlink*, 284 F.3d 1007, 1021 (9th Cir. 2002). This requirement may be satisfied if Wheaton would not have been injured "but for" Defendants' forum-related conduct. *Rio Props.*, 284 F.3d at 1021; *Menken*, 503 F.3d at 1058.

At this step, the Court considers "the extent of the defendant's contacts with the forum and the degree to which the plaintiff's suit is related to those contacts. A strong showing on one axis will permit a lesser showing on the other." *Yahoo! Inc.*, 433 F.3d at 1210. A single forum state contact can support jurisdiction if "the cause of action ... arise[s] out of that particular purposeful contact of the defendant with the forum state." *Id.* (citing *Lake*, 817 F.2d at 1421).

The activity alleged to have caused the damages in the present case is the sale of assets, allegedly to frustrate Wheaton's ability to recover on its Idaho judgment. "But for" this conduct, Franmar might have assets to satisfy its obligations under the joint venture and the *Wheaton I* judgment, and Wheaton might not have been injured. No judgment would exist if Defendants had

not first engaged in business in Idaho.  Accordingly, it is recommended that the District Court

find Plaintiff has met its burden at steps one and two of the specific jurisdiction test.

        *d.*     *Reasonableness*

At the third and final step, the burden shifts to the Defendants to "present a compelling

case" that the exercise of jurisdiction would not be reasonable. *Burger King Corp. v. Rudzewicz,*

471 U.S. 462, 476-78 (1985) (explaining that, after it has been decided that a defendant

purposefully established minimum contacts with a forum, "he must present a compelling case that

the presence of some other considerations would render jurisdiction unreasonable" in order to

defeat personal jurisdiction).  "In determining whether the exercise of jurisdiction comports with

"fair play and substantial justice," and is therefore reasonable, this Court considers seven factors

identified by the Ninth Circuit:

> (1) the extent of the defendants' purposeful injection into the forum
> state's affairs; (2) the burden on the defendant of defending in the
> forum; (3) the extent of conflict with the sovereignty of the
> defendant's state; (4) the forum state's interest in adjudicating the
> dispute; (5) the most efficient judicial resolution of the controversy;
> (6) the importance of the forum to the plaintiff's interest in
> convenient and effective relief; and (7) the existence of an
> alternative forum.

*Dole Food,* 303 F.3d at 1114.  "None of the factors is dispositive in itself;" instead, the Court

must balance all seven.  *Core-Vent Corp. v. Nobel Indus. AB,* 11 F.3d 1482, 1488 (9th Cir. 1993).

Factor One favors Wheaton and the exercise of jurisdiction.  Even though the Court has

already determined that Franmar and Franklin Tolbert purposefully availed themselves of the

privilege of doing business in Idaho, "the degree of interjection is nonetheless a factor in

assessing the overall reasonableness of jurisdiction under this prong." *Harris Rutsky & Co. Ins.*

REPORT AND RECOMMENDATION - 21

*Servs., Inc. v. Bell & Clements Ltd.*, 328 F.3d 1122, 1132 (9th Cir. 2003); *see also Dole Food*, 303 F.3d at 1114-15 (noting that "[t]here may be circumstances under which the level of purposeful injection into the forum supports a finding of purposeful availment yet still weighs against the reasonableness of jurisdiction"). Although it may have been some time since Franklin was in Idaho on behalf of Franmar working upon the joint venture, his work (and that of Franmar) in Idaho on that venture was more than incidental and his actions after the Judgment and Amended Judgment were entered are part of what has kept that connection alive, even if unintentionally so.

Factor Two is of no particular weight to either party. Undoubtedly, it is more burdensome for Defendants to litigate in Idaho than in Texas, where Franklin now resides, or Colorado, where Franmar was incorporated and later dissolved, but they have done so before and had no trouble doing business in Idaho with Wheaton in the joint venture. Additionally, "with the advances in transportation and telecommunications and the increasing interstate practice of law, any burden is substantially less than in days past." *CE Distrib.*, 380 F.3d at 1112.

Factor Three slightly favors Franmar and Franklin, who argues that "[c]learly, conflict with the sovereignty of the Defendants' states is inevitable." Franmar, et al., Defs. Memo. in Supp. of Mot. to Dismiss, p.15 (Docket No. 22). Wheaton requests that this Court levy upon real property and personal assets that existed in Colorado and were transferred in Colorado. This type of relief, which includes a request by Wheaton for a declaratory judgment setting aside each and every asset transfer and attaching those assets so that Wheaton may levy on them, necessarily implicates issues of multiple jurisdictions. *See* Compl., p. 19 (Docket No. 3). It may go too far to say, however, that "conflict" with the sovereignty of Texas and/or Colorado is inevitable,

REPORT AND RECOMMENDATION - 22

particularly given the "full faith and credit" ordinarily afforded to the judgments of other states. *See, e.g., Harris Rutsky & Co,* 328 F.3d at 1133 (noting that this factor is not controlling).

Factor Four weighs in favor of Wheaton. Idaho has a substantial interest in adjudicating the dispute of one of its residents who alleges injury due to the fraudulent conduct of another.

Factor Five favors Defendants because the witnesses and evidence related to the transfers are located in Colorado and Texas. *See Menken,* 503 F.3d at 1061 (this factor looks "primarily at where the witnesses and the evidence are likely to be located."). Additionally, although Wheaton's claims for fraudulent transfer, to pierce the corporate veil, and for conspiracy, have support from both Idaho and Colorado law, Wheaton's claim for breach of duty is brought under Colorado statutory and common law. Compl., ¶¶ 51-52.

Factor Six slightly favors Wheaton. Wheaton chose to litigate in Idaho, its home forum. "Litigating in one's home forum is obviously most convenient; however, . . . this factor is not of paramount importance." *CE Distrib.,* 380 F.3d at 1112 (internal quotation marks and citation omitted).

Factor Seven is a wash. Although Defendants contend that Colorado and Texas are possible alternative forums, nothing in the record establishes persuasively that either Texas or Colorado is a better forum for *all* of the claims in this case, as currently postured. *See Insurance Co. of N. Am. v. Marina Salina Cruz,* 649 F.2d 1266, 1273 (9th Cir. 1981) ("If a plaintiff wishes to argue the unavailability of an alternative forum as a factor increasing the reasonableness of jurisdiction in the forum, he must carry the burden of going forward on this issue.").

Ultimately, the reasonableness determination is not made simply on the basis of a mathematical calculation. Instead, the factors are balanced in light of the "heavy burden" on Defendants to present a "compelling case of unreasonableness to defeat jurisdiction." *See Dole Food*, 303 F.3d at 1117 (citation and internal quotation marks omitted). Considering all of the factors and the circumstances of this case, Defendants Franmar and Franklin Tolbert fail to overcome the strong presumption of reasonableness in this case, particularly considering the nature and extent of their contacts with Idaho. In short, these Defendants' "conduct and connection" with Idaho are such that they "should reasonably anticipate being haled into court [here]." *Sher*, 911 F.2d at 1361 (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980) (internal quotation marks omitted).

For these reasons, it is recommended that the District Court exercise *in personam* jurisdiction over Defendants Franmar and Franklin Tolbert.

**F.    Jurisdiction Over Martha Tolbert Is Appropriate Under Plaintiffs' Alter Ego Theory**

Plaintiff argues that Martha Tolbert is subject to jurisdiction in Idaho because as an incorporator, shareholder, secretary/treasurer, and registered agent of Franmar, "she was a party to all of Franmar, Inc.'s contacts with the State of Idaho precipitating and following [*Wheaton I*]." Pl's Opp. Memo., p.14 (Docket No. 20). Plaintiff also points to Martha's trip to Idaho for the trial in *Wheaton I* as a basis for personal jurisdiction. *Id.* at p.15.

**1.    Martha Tolbert Did Not Transact Business in Idaho**

Martha Tolbert's contacts with Idaho are limited to one visit over a period of four to five days in December of 2005 to attend the *Wheaton I* trial. Martha Tolbert Aff., ¶ 3 (Docket No. 15-4). This one visit to Idaho in 2005 does not have any meaningful relation to the present action

REPORT AND RECOMMENDATION - 24

because she was not a party in *Wheaton I*. Additionally, although she was an initial incorporator and director of Franmar along with her husband Franklin, and she was the Secretary/Treasurer of Franmar during most of that corporation's existence, *see* Second Reid Aff., Exs. C & D (Docket No. 20-2), there are no allegations that she had any part in the business transactions that led to the lawsuit in *Wheaton I* or that she orchestrated the disposal of any of Franmar's assets.

Accordingly, long-arm jurisdiction under Idaho Code § 5-514(a) over Martha, based on the transaction of business in Idaho by Franmar and by her husband, is not appropriate. *See Knutsen v. Cloud*, 142 Idaho 148, 151, 124 P.3d 1024, 1027 (2005) ("The plain language of our long-arm statute does not permit a court to exercise personal jurisdiction over the agent of a company who lacks sufficient contacts with Idaho, even if the principal is subject to jurisdiction through the actions of its other agents. Our long-arm statute works only in the reverse, allowing a court to exercise personal jurisdiction over a principal when its agent has sufficient contacts with Idaho."). For the same reason, it cannot be said that Martha purposefully availed herself of the privilege of doing business in Idaho sufficient to meet the first prong of the specific jurisdiction test. *See Davis*, 885 F.2d at 522.

### 2.   Martha Tolbert's Alleged Conduct Falls Within the Tortious Injury Provision of Idaho's Long-Arm Statute, I.C. § 5-514(b)

Notwithstanding her lack of any "doing business" contacts with Idaho, long-arm jurisdiction under subsection (b) of Idaho Code § 5-514 is appropriately exercised over Martha because Wheaton alleges she accepted from her husband a transfer of property originally owned by Franmar. Notably, Martha is not a disinterested third party to such a transaction; rather, as the wife of Franklin she benefitted personally from the property transfers and alleged avoidance of payment on the *Wheaton I* judgment. Additionally, Wheaton alleges that $580,000 from the

REPORT AND RECOMMENDATION - 25

Franmar asset disposal was used to pay off a credit line secured by the personal residence of Martha and Franklin. Compl. at ¶ 26. If, as alleged, Ms. Tolbert knew of her husband's actions to dispose of Franmar's assets and knew that Franmar had not paid anything on the *Wheaton I* judgment, her conduct caused injury to Wheaton in Idaho. "[A]n allegation that an injury has occurred in Idaho in a tortious manner is sufficient to invoke the tortious act language of I.C. § 5-514(b)." *Blimka*, 143 Idaho at 726, 152 P.3d at 597 (quoting *St. Alphonsus*, 123 Idaho at 743, 852 P.2d at 495). These allegations also are sufficient to demonstrate that Martha purposefully directed her activities toward Idaho and thus, for the reasons described at section II.E.3.a and II.E.3.c *supra*, satisfy the first two prongs of the test for specific jurisdiction. *See* discussion *supra*.

### 3.   Exercising Personal Jurisdiction Over Martha Tolbert Comports With Due Process Under an Alter Ego Theory

There remains, as to Martha, the question of whether the exercise of personal jurisdiction is consistent with due process protections. Her individual contacts with Idaho, as described earlier, are attenuated and not nearly so pervasive as her husband's contacts with Idaho. She is described, essentially, as having only "connected" with Idaho to support her husband, who was being sued along with their company in Idaho. Such contacts run marginally close to falling short of the minimum contacts to comport with due process. *Sher*, 911 F.2d 1357, 1365 (9th Cir. 1990) (explaining that "jurisdiction over each defendant must be established individually," and "depends only upon each defendant's relationship with the forum").

However, some federal courts, including the Ninth Circuit, have upheld the exercise of personal jurisdiction over an individual or a corporation when that individual or corporation is an alter ego or successor of a corporation that is subject to personal jurisdiction in the forum court.

REPORT AND RECOMMENDATION - 26

*See Flynt Distrib. Co., Inc. v. Harvey*, 734 F.2d 1389, 1393-94 (9th Cir. 1984); *Patin v. Thoroughbred Power Boats Inc.*, 294 F.3d 640, 653 (5th Cir. 2002); *Estate of Thomson ex rel. Estate of Rakestraw v. Toyota Motor Corp. Worldwide*, 545 F.3d 357, 362 (6th Cir. 2008). Wheaton has alleged in its Verified Complaint that Martha and Franklin Tolbert used Franmar and Tolbert LLC as instrumentalities to transact their own affairs, commingled funds, and used funds and assets of Tolbert LLC and Franmar for noncompany purposes and for their own personal gain. Compl., ¶¶ 57-67. Wheaton also alleged that the Tolberts used Franmar and Tolbert LLC as a "mere shell" and that the companies were "thinly capitalized." *Id.*

Although the Complaint's allegations indicate that Franklin directed most of Franmar's operations, Compl. at ¶¶ 25-32, Martha was an initial incorporator and director of Franmar, she served as the Secretary and Treasurer of Franmar, she received filing notices on behalf of Franmar from the Colorado Secretary of State, and she is listed in at least one communication from the Secretary of State as the person responsible for the accuracy of Franmar's annual report. Second Reid Aff., Ex. D (Docket No. 20-2).

Even considering Martha's otherwise limited contacts with Idaho, the allegations made by Wheaton about her extensive connection to Franmar (which was not challenged by the Tolberts by affidavit or declaration) meet the required prima facie showing to assert an alter ego claim. *Compare Flynt Distrib. Co.*, 734 F.2d at 1393-94 (determining that plaintiff made a prima facie showing of an alter ego relationship by submitting affidavits indicating that the two sole shareholders of several corporations had converted corporate assets for their own use, had dealt with the various corporations as if they were one, and had transferred assets among the corporations, leaving some of them undercapitalized). Exercising *in personam* jurisdiction over

REPORT AND RECOMMENDATION - 27

Martha based on Franmar's contacts with Idaho is appropriate, given the nature of Wheaton's

allegations regarding the wrongful disposal of Franmar's assets and the involvement of Martha in

the receipt of at least a portion of those assets and the extensive involvement of Martha in

Franmar's corporate structure.

**G.      In Personam Jurisdiction over Tolbert Equipment Co., LLC
          is Appropriate Under an Alter Ego Theory**

        Nothing in the record suggests that Tolbert LLC has transacted business in Idaho or owns

property in Idaho, nor did Tolbert LLC participate directly as a transferor or transferee of any of

the alleged fraudulent transfers that form the basis for the present action. *See* Tolbert LLC Aff.,

¶¶ 4-6 (Docket No. 15-5).  Even if the Court assumes that Plaintiff has met its burden to

demonstrate that the long-arm statute's requirements have been satisfied, exercise of jurisdiction

over Tolbert LLC would not comport with due process.  Tolbert LLC does not have any contacts

with Idaho, let alone the minimum contacts necessary to provide a basis for the Court's exercise

of *in personam* jurisdiction.  Hence, if the Court focuses solely upon Tolbert LLC as a foreign

entity, with no contacts with Idaho, and considering "the relationship among [Tolbert LLC], the

forum, and the litigation," *Shaffer*, 433 U.S. at 204, it cannot be said that its conduct and

connection with Idaho are such that it should "reasonably anticipate being haled into court

[here]," *World-Wide Volkswagen*, 444 U.S. at 297.

        However, as with Martha Tolbert, Wheaton raises an alternative theory against Tolbert

LLC, which contends that Tolbert LLC is the alter ego of both Franklin Tolbert and Franmar

because (a) Tolbert LLC was formed after Franmar filed for bankruptcy and Franklin Tolbert

discontinued Franmar's operations; (b) it engages in business activities substantially similar to

REPORT AND RECOMMENDATION - 28

those of Franmar; and (c) Franklin Tolbert is the principal owner and operator of both entities. Pl.'s Opposition Memo., p. 15 (Docket No. 20) (arguing that "[u]nder an alter ego theory," the Court may find "jurisdiction as to Tolbert LLC based upon the contacts of Franmar, Inc. with the forum state - Idaho - and Plaintiff has made a *prima facie* case, as shown by the Complaint, for piercing, and reverse piercing, of the corporate veil of Tolbert LLC").

Both Idaho and Colorado law allows litigants to pierce the corporate veil of a limited liability company.[14] *See, e.g., Great Neck Plaza, L.P. v. Le Peep Restaurants, LLC*, 37 P.3d 485, 490 (Colo.App. 2001) (upholding a district court's decision to pierce the corporate veil to find a limited liability company was the alter ego of another company); *Vanderford Co., Inc. v. Knudson*, 165 P.3d 261 (Idaho 2007) (remanding case for new trial because trial judge did not give a jury instruction allowing the jury to find a limited liability company to be the alter ego of the defendant).

Additionally, several federal courts including the Ninth Circuit have "acknowledged that it is compatible with due process for a court to exercise personal jurisdiction over an individual or a corporation that would not ordinarily be subject to personal jurisdiction in that court when the individual or corporation is an alter ego or successor of a corporation that would be subject to personal jurisdiction in that court." *Patin v*, 294 F.3d at 653 (5th Cir. 2002). *See also Estate of Thomson*, 545 F.3d at 362 (6th Cir. 2008); *American Tel. & Tel. Co. v. Compagnie Bruxelles Lambert*, 94 F.3d 586, 591 (9th Cir. 1996). The most common application of this alter-ego theory of personal jurisdiction is to parent-subsidiary relationships. *Patin*, 294 F.3d at 653.

---

[14]    The phrase "corporate veil" is antiquated and not entirely precise when used in reference to a limited liability company, but the legal principles are largely the same.

REPORT AND RECOMMENDATION - 29

In Idaho, for a company to "be an alter ego of an individual, there must be (1) a unity of interest and ownership to a degree that the separate personalities of the corporation and individual no longer exist and (2) if the acts are treated as acts of the corporation an inequitable result would follow." *Vanderford*, 165 P.3d at 270-71. Wheaton has alleged in a Verified Complaint that Franklin and Martha Tolbert used Franmar and Tolbert LLC as instrumentalities for the transaction of their own affairs and that the funds and assets of Tolbert LLC and the Tolberts individually were commingled, the Tolberts used funds and assets of Tolbert LLC and Franmar for noncompany purposes and for their own personal gain, and that Tolbert LLC was used to hide assets from Wheaton. Compl., ¶¶ 57-67. The Tolberts have not responded to these allegations by affidavit or declaration stating that they did not use the funds and assets of Tolbert LLC and/or Franmar as their own.

Wheaton has alleged that the Tolberts used both Tolbert LLC and Franmar as their alter ego, commingling personal funds with each entity's funds, and that they used Tolbert LLC to hide assets from Wheaton. Compl., ¶ 66. The Seventh Circuit has upheld a district court's decision that plaintiff submitted enough evidence to enable a company's owner to be brought within the personal jurisdiction of the district court under a corporate veil piercing allegation where the company set up a "shell" corporation and the company's structure apparently was "designed to keep all [the company's] assets in corporations that have no liabilities and all its liabilities in corporations that have no assets." *Illinois Bell Telephone Co., Inc. v. Global NAPs Illinois, Inc.*, 2008 WL 5273539, *10 (7th Cir. 2008) (Posner, J.).

Although this is an unpublished opinion from another circuit, the reasoning is persuasive here. Given the timing of Tolbert LLC's creation, contemporaneous to a bankruptcy proceeding

REPORT AND RECOMMENDATION - 30

(dismissed as a bad faith filing) in which Franmar (through Franklin Tolbert) was trying to discharge its debts, and the apparently identical nature of the business engaged in by Tolbert LLC and Franmar, along with Franklin's principal involvement in both companies, there is a reasonable basis for Wheaton to allege that Tolbert LLC should be considered the alter ego of both Franklin and Franmar. Such an allegation, upon such facts, in turn provides a basis for the Court to exercise personal jurisdiction over Tolbert LLC. *See also Systems Div., Inc. v. Teknek Electronics, Ltd.*, 253 Fed. Appx. 31, 33, 2007 WL 3151697, *3 (Fed. Cir. 2007) (providing persuasive authority here by applying Ninth Circuit law and upholding a district court's exercise of personal jurisdiction even though there was no evidence of commingling of funds or shared bank accounts between the company and its alter egos because there was ample evidence that assets were fraudulently transferred and there was such unity of interest and ownership, the district court found that the separate personalities of the company an its alter egos no longer existed). Accordingly, it is recommended that the District Court exercise personal jurisdiction over Tolbert LLC.

**H.    Analysis and Rulings as to Hamilton & Faatz**

The sole connection between the Colorado law firm of Hamilton & Faatz and Idaho is Clyde Faatz's representation of Franmar and Franklin Tolbert as counsel admitted *pro hac vice* in *Wheaton I*. Clyde Faatz is a shareholder in Hamilton & Faatz, a professional corporation comprised of attorneys licensed to practice law in the state of Colorado and organized under the laws of Colorado. Faatz Aff., ¶¶ 1, 3 (Docket No. 11-2). Prior to and since the *Wheaton I* lawsuit, Hamilton & Faatz has not provided legal representation in Idaho, and the firm has never provided legal representation to an Idaho resident. *Id.* at ¶¶ 5-6, 8.

REPORT AND RECOMMENDATION - 31

1.    **General Jurisdiction & the Law Firm**[15]

Although general jurisdiction has been discussed with respect to all Defendants at section

II.D *supra*, the Court briefly will consider here the law firm representation cases discussing

general jurisdiction that were cited by the parties in their briefing.  Particularly relevant is a New

Jersey federal district court's unpublished decision, *Ajax Enterprises, Inc. v. Szymoniak Law*

*Firm, P.A.*, Case No. CV 05-5903(NLH), 2008 WL 1733095 (D.N.J. April 10, 2008).  The court

in *Ajax* explained that it could not exercise general jurisdiction over an out-of-state attorney

because "she has never appeared as counsel for Liberty Mutual, or for any other client in New

Jersey," "[s]he has never received *pro hac vice* admission to practice in New Jersey," "[s]he does

not recruit business here or represent any clients in New Jersey," and therefore, "the requisite

'continuous and systematic' contacts between [the attorney] and New Jersey do not exist." *Id.*

at *4. *See also Sea Marsh Group, Inc. v. SC Ventures, Inc.*, Nos. 94-1140, 96-1524, 1997 WL

173232, *6 (4th Cir. April 11, 1997) (stating that an "attorney's entry of a court appearance *pro*

*hac vice* in the forum state, *without more*, is not a substantial enough contact to permit that court

to exercise jurisdiction over his person") (emphasis added)).

Hamilton & Faatz, through Clyde Faatz who was admitted *pro hac vice* to represent

Defendants Franmar and Franklin Tolbert in Idaho, actively participated in the *Wheaton I*

litigation and trial.  However, such activities are an unusual event in the ordinary nature of a

lawyer's practice.  They are recognized as unusual by the very nature of a *pro hac vice* admission

---

[15]  Plaintiff asserts that the Court need not find general jurisdiction in this case and
should "employ the test for specific jurisdiction." Pl.'s Memo. in Opposition, p. 6 (Docket No.
13). However, Plaintiff did not waive any argument that general jurisdiction exists in this case
based on the pro hac vice admission in *Wheaton I. Id.* at p. 13, n. 1.

procedure in any given court, including the United States District Court of Idaho.  Accordingly, the fact that Hamilton & Faatz participated in the *Wheaton* case, even through a trial, does not rise to the level of activity required for the exercise of general jurisdiction because they are not "continuous and systematic," *Helicopteros*, 466 U.S. at 416, nor do they "approximate physical presence," *Bancroft & Masters*, 223 F.3d at 1086.

### 2.   Idaho Code § 5-514(a) - Wheaton's Claims Do Not Arise Out of Hamilton & Faatz's Transaction of Business in Idaho

Wheaton argues that "[i]t is the transaction surrounding the payment for the legal fees generated in the State of Idaho, which gives rise to the instant lawsuit." Pl.'s Memo. in Opposition, p. 3 (Docket No. 13).  Hamilton & Faatz accepted a piece of Franmar's equipment, a rock crusher, in satisfaction of the debt owed by Franmar and Franklin Tolbert for attorneys' fees. *Faatz Aff.*, ¶ 10.  Hamilton & Faatz acquired the equipment in Colorado and entered the agreement by which it sold the rock crusher in Colorado. *Id.*

Idaho Code 5-514(a) provides for long-arm jurisdiction "as to any cause of action arising from . . . [t]he transaction of any business within the state."  The transaction of any business is "defined as the doing of any act for the purpose of realizing pecuniary benefit . . . ." Idaho Code § 5-514(a).  As Wheaton noted, Mr. Faatz represented Franmar as lead counsel in the Idaho trial in *Wheaton I*.  First Reid Aff., ¶ 6 (Docket No. 14). *See also* Faatz Aff., ¶¶ 6, 8 (Docket No. 11-2).  In exchange for this work, Hamilton & Faatz generated a fee of about $121,000.  First Reid Aff., Ex. A, p. 29 (Docket No. 14).  Although Hamilton & Faatz received a pecuniary benefit from its work in Idaho, and the fees generated in part from that work led to Hamilton & Faatz's acceptance and sale of a rock crusher to satisfy the fees, for the reasons explained in section II.H.4.b *infra*, the claims here do not *arise from* the transaction of business in Idaho.  Rather, the

REPORT AND RECOMMENDATION - 33

claims arise from Hamilton & Faatz's acceptance of a fee in Colorado and the method used in Colorado to collect that fee. This collection effort in Colorado is not a sufficient basis to invoke subsection (a) of Idaho's long-arm statute.

**3.     Wheaton's Allegations are Sufficient to Satisfy Idaho Code § 5-514(b) and the Purposeful Direction Element of Specific Jurisdiction**

Idaho Code 5-514(b) provides for long-arm jurisdiction as to any cause of action arising from "[t]he commission of a tortious act within the state." The primary claim against Hamilton & Faatz is the conspiracy claim in which Plaintiff alleges that all Defendants "expressly and/or impliedly agreed among themselves on a course of action to defeat and/or frustrate Wheaton from collecting, enforcing and executing upon" the judgments entered in *Wheaton I.* Compl., ¶ 68. Wheaton also named Hamilton & Faatz in the fraudulent transfer claim as an "insider" who allegedly received assets without a reasonably equivalent value, not in good faith, and knowing that Franmar was insolvent. *Id.* ¶¶ 45-46, 50.

The Idaho Supreme Court has held that "an allegation that an injury has occurred in Idaho in a tortious manner is sufficient to invoke the tortious act language of I.C. § 5-514(b)." *Blimka*, 143 Idaho at 726, 152 P.3d at 597 (internal quotation marks and citation omitted) (finding sufficient minimum contacts where a Maine defendant "intentionally directed false representations to, and caused injury in Idaho," and explaining that the Idaho resident "need not travel to Maine to pursue his or her claim against the perpetrator of the fraud"). Here, there is nothing to indicate that Hamilton & Faatz made representations by phone or other

REPORT AND RECOMMENDATION - 34

communications to Idaho similar to the defendant in *Blimka*.[16]  However, Wheaton has alleged

that the law firm conspired with Franmar and Franklin Tolbert to avoid paying the judgment in

*Wheaton I* by transferring Franmar's assets for less then their reasonable value.  To satisfy the

attorneys' fees debt owed by Franmar, Hamilton & Faatz sold the rock crusher for around

$80,000, even though its stated value in the bankruptcy proceeding was $175,000 and they were

owed $121,000 in fees.  First Reid Aff., Ex. A, p. 29 (Docket No. 14).  These allegations are

sufficient to bring the law firm within the reach of § 5-514(b).

   Similarly, Wheaton has sufficiently alleged facts which, if true, would demonstrate that

Hamilton & Faatz purposefully directed tortious activities toward Idaho, thus meeting the first

element the specific jurisdiction test. *Schwarzenegger*, 374 F.3d at 803 (explaining the "effects"

test for purposeful direction requires the defendant allegedly have (1) committed an intentional

act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to

be suffered in the forum state).  Specifically, Wheaton alleges that Hamilton & Faatz accepted

assets and conspired to do so with the intent to help Franmar avoid paying Wheaton, a judgment

creditor in Idaho, and that the value of the rock crusher was not reasonably equivalent to what the

law firm was owed or what it obtained from the equipment's sale.  This is the crux of a fraudulent

transfer claim. *See* Colo. Rev. Stat. Ann. § 38-8-105; Idaho Code § 55-913(1) (setting forth that

the debtor must have made the transfer: "(a) [w]ith actual intent to hinder, delay, or defraud any

creditor of the debtor; or (b) [w]ithout receiving a reasonably equivalent value in exchange for the

transfer or obligation, and the debtor").  However, the Court need not consider the second prong

---

   [16]  Direct communications with Wheaton would have been inappropriate, of course;
however, it is possible that there could have been communications between the law firm and
Wheaton's counsel relating to the judgment debt and how it was, or was not, to be satisfied.

REPORT AND RECOMMENDATION - 35

for the exercise of specific jurisdiction—whether Wheaton would not have been injured "but for" Defendants' forum-related conduct, *Rio Props.*, 284 F.3d at 1021— because due process considerations prevent the Court from exercising specific jurisdiction over Defendant. See discussion at II.4.c *infra*.

### 4.    Purposeful Availment & Due Process Considerations as to Hamilton & Faatz

#### a.    *Purposeful Availment*

Plaintiff focuses on Hamilton and Faatz's appearance in *Wheaton I*, and its acceptance of Franmar's equipment to satisfy the attorneys' fees incurred in that case, as purposeful availment. Pl.'s Memo. in Opposition, p. 7 (Docket No. 13). Purposeful availment occurs when a party performs some act by which it purposefully avails itself of the privileges of conducting activities in the forum, thereby invoking the benefits and protections of its laws. *Dole Food,* 303 F.3d at 1104.

In *Sher v. Johnson*, 911 F.2d 1357 (9th Cir. 1990) the Ninth Circuit examined a Florida law firm's connection with California to determine if exercise of jurisdiction over the law firm in California was appropriate. The Florida firm represented a California client in a criminal proceeding in Florida and "[a]s normal incidents of this representation the [law firm] accepted payment from a California bank, [and] made phone calls and sent letters to California." *Id.* at 1362. The Ninth Circuit found that "[t]hese contacts, by themselves, do not establish purposeful availment; this is not the deliberate creation of a 'substantial connection' with California." *Id.* In

making this determination, however, the court found significant that "the business that the partnership promoted was legal representation in Florida, not California [the forum state]."[17]

In contrast, the business Hamilton & Faatz provided here included legal representation in Idaho, the forum state. *See Mayes v. Leipziger*, 674 F.2d 178 (2nd Cir. 1982) (finding "no activity in New York in which defendants sought to participate," and therefore no purposeful availment in New York, where California law firm represented a New York resident in litigation in California and *no member of the firm ever entered New York* as part of the representation") (emphasis added). Although Hamilton & Faatz solicits clients in Colorado and it developed a relationship with Franmar and Franklin Tolbert there, it decided to take the role of lead counsel in *Wheaton I* in Idaho. *Compare Sher*, 911 F.2d at 1363 ("Out-of-state legal representation does not establish purposeful availment of the privilege of conducting activities in the forum state, where the law firm is solicited in its home state and takes no affirmative action to promote business within the forum state.").

More persuasive here than the *Sher* case are malpractice cases in which lawyers provided the challenged legal representation in the forum state. For example, in *Jackson v. Kincaid*, the Texas appellate court found appropriate the exercise of personal jurisdiction over Oklahoma lawyers in a Texas case brought by owners of shares and interests in energy companies represented by that law firm. 122 S.W.3d 440 (Tex.App. 2003) *review granted, judgment vacated*

------

[17] Later in the *Sher* opinion, the Ninth Circuit concluded that the partnership had "invok[ed] the benefits and protections" of the laws of California for purposes of jurisdiction based on the "partnership's entire 'course of dealing' with the [Plaintiffs] . . . , including the calls and letters, the trips," and that the partnership, to secure the payment for the legal representation, required Plaintiffs to execute a deed of trust in favor of the partnership, encumbering the Plaintiffs' California home. *Sher*, 911 F.2d at 1363-64.

REPORT AND RECOMMENDATION - 37

*without discussion, and remanded by agreement* (Dec. 10, 2004). The plaintiffs asserted claims

for fraud, malpractice, gross negligence, and breach of contractual and fiduciary duties. *Id.* The

court found significant that the lawyers had "provided extensive legal representation in

connection with bankruptcy proceedings in a Texas federal bankruptcy court," and "appeared *pro

hac vice* before that court." *Id.* at 448-49. Although the Oklahoma lawyers in *Jackson* did not

associate local Texas counsel in the bankruptcy case, and Hamilton & Faatz did associate local

counsel in *Wheaton I*, a local rule required Hamilton & Faatz to associate local counsel. *See* D.

Idaho L. Civ. R. 83.4, 83.6. Additionally, the record here indicates that Hamilton & Faatz

operated as lead counsel and took an active role in the representation and trial.

    As in *Jackson*, Hamilton & Faatz here emphasize that Wheaton dragged their clients, and

therefore the lawyers, into court in Idaho. The Jackson court explained why this did not negate

the lawyers' contact with the forum state:

> The Lawyers also point out that their clients' creditors chose Texas
> as the forum, not them. Consequently, the Lawyers maintain, the
> services they provided in connection with the Bristol Bankruptcy
> were not purposefully directed at Texas. This argument ignores the
> fact that the clients could (and eventually did) retain Texas counsel.
> The Bristol Entities may not have had a choice about the forum
> selected by their creditors, *but their Oklahoma lawyers had a
> choice about whether to represent them in that forum.* They chose
> to do so.

122 S.W.3d 450 (emphasis added). Hamilton & Faatz had a similar choice in *Wheaton I* and

chose, with their clients' agreement, to take the lead role in that litigation. Additionally,

Hamilton & Faatz prosecuted a counterclaim on behalf of their clients in the *Wheaton I* lawsuit.

    In a decision cited by Defendant, *Star Technology v. Tultex Corp.*, 844 F. Supp. 295 (N.D.

Tex. 2003), the Texas court determined it lacked jurisdiction over a Washington D.C. lawyer who

REPORT AND RECOMMENDATION - 38

resided in Virginia and was sued by the plaintiff in Texas for conspiracy to commit tortious acts. *Id.* at 296. The court described the lawyer's contacts with Texas as "few": "He has visited Texas on four occasions . . . twice in relation to the instant lawsuit as an attorney" for a company also charged as a defendant. *Id.* at 297. One of these two trips lasted about a week, during which the attorney participated in settlement discussions, mediation, and discovery. *Id.* at 298. "Other than these few contacts, [the lawyer's] work for the company "in this suit appear "to have occurred in Washington, D.C., with the remainder of local work handled by local counsel." *Id.* at 298.

The court in *Star Technology* found significant that the attorney client relationship forming the basis for the plaintiff's claim of jurisdiction over the lawyer was between a third party and the defendant lawyer and not between the plaintiff and the lawyer. 844 F. Supp at 298. In the present case, however, the law firm has more substantial contacts with Idaho based on its active role in the trial. The Court thus finds the circumstances of the *Star Technology* case vary in a significant manner from the facts presented here. The court in *Star Technology* labeled the D.C. lawyer's contacts "few" and it appears local counsel handled much of the work. Mr. Faatz averred that local counsel in *Wheaton I* gave the opening statement at trial and "participated actively" in the trial. Faatz Aff., ¶ 6 (Docket No. 11-2). Even with this participation by local counsel, other information in the record indicates that Mr. Faatz took the lead role in the trial and the litigation.

In making its decision that the lawyer's contacts with Texas were insufficient to support personal jurisdiction, the *Star Technology* court relied on cases in which other courts have found a lack of jurisdiction, but these cases are distinguishable. In *Austad Company v. Pennie & Edmonds*, for instance, the Eight Circuit concluded that there was no substantial connection

REPORT AND RECOMMENDATION - 39

between a New York law firm and a South Dakota client sufficient to support personal jurisdiction over the law firm in a South Dakota malpractice case.  823 F.2d 223 (8th Cir. 1987). The New York law firm provided representation in a Maryland case, and its contacts with South Dakota were limited to sending two people to South Dakota for a three-day document review and receiving checks paid by a South Dakota bank in response to billings mailed to South Dakota. *See id.* at 226.  Significantly, the suit in which the New York law firm provided representation was in Maryland, and not the forum state of South Dakota.  The *Austad* court also found that significant, stating: "the actions giving rise to this lawsuit took place in Maryland, not in South Dakota." *Id.*  The other cases cited by the court in *Star Technology* similarly involved attorney-client relationships that did not require the non-resident lawyers' appearance at a trial in the forum state.

The Court, however, need not resolve  whether Hamilton & Faatz's contacts with Idaho are sufficient to find purposeful availment because the Court has already determined that Wheaton's allegations are sufficient to meet the purposeful direction test and, even if the law firm purposefully availed itself of Idaho's benefits, Wheaton's claims do not "arise out" of the forum-related activities.

### b.    Forum-Related Activities

For the Court to find specific jurisdiction even where the defendant has purposefully availed itself of the benefits of the forum state, the claim "must be one that arises out of or relates to the defendant's forum-related activities." *Dole Food*, 303 F.3d at 1104. That additional test is not met here. Hamilton & Faatz's representation of Franmar and Franklin Tolbert in Idaho did not give rise to the fraudulent conveyance or conspiracy claims at issue in this case. This is not an instance, similar to the other defendants, where the instant claims for relief are from a common genesis. For the other defendants, the present lawsuit is a another branch of the same tree of dispute created by the joint venture to buy equipment from the Beartrack mine. Hamilton & Faatz were not part of that joint venture; rather, the law firm's involvement was to represent one side of the lawsuit that first arose from that ill-fated enterprise. This, coupled with the circumstances discussed above, demonstrates that the claim does not arise out of the law firm's activities in Idaho.

### c.    Reasonableness

Even if Wheaton's claims could be said to arise from Hamilton & Faatz's Idaho representation, an additional basis exists for the Court's recommendation that the District Court decline to exercise *in personam* jurisdiction over the law firm. The exercise of jurisdiction must comport with fair play and substantial justice, *i.e.*, it must be reasonable. *Dole Food*, 303 F.3d at 1104. An examination of the seven factors from *Dole Food* indicates that the exercise of jurisdiction here would not comport with due process. *Id.* Although Hamilton & Faatz must make a compelling case that jurisdiction will be unreasonable, such a case is made here.

REPORT AND RECOMMENDATION - 41

To satisfy the attorneys' fees debt owed by Franmar, Hamilton & Faatz sold the rock crusher for around $80,000, even though its stated value in the bankruptcy proceeding was $175,000 and they were owed $121,000 in fees. First Reid Aff., Ex. A, p. 29 (Docket No. 14). Although for these purposes the Court will imply from the record that Hamilton & Faatz knew that its client owed Wheaton a significant judgment in Idaho, there is no allegation nor other indication in the record that anyone at the firm knew the value Franklin and Franmar assigned to the rock crusher in the bankruptcy proceeding. There also is no indication that Hamilton & Faatz knew it would receive only $80,000 for the crusher sale, a sum $41,000 less than the fees owed by Franmar and Franklin.

Moreover, Franmar owed money to both. Hamilton & Faatz collected on its debt. Nothing in the record alleges that the law firm had any part in the decision made by Franmar and Franklin to pay the law firm before paying Wheaton. In short, although there is a bare allegation in the Complaint that Hamilton & Faatz acted for the purpose of conspiring with Franmar and Franklin to avoid payment on the judgment, the other allegations and facts in the record do not support this claim. Unlike Martha Tolbert who accepted from her husband a gift of property originally owned by Franmar, Hamilton & Faatz accepted property in satisfaction of a legitimate debt obligation.

Hamilton & Faatz was requested by an out-of-state defendant to assist in the defense of a lawsuit brought in Idaho. It did so with the assistance of an Idaho based law firm. To the extent that the particular lawyer involved in the case—Clyde Faatz—was deeply involved (as Wheaton alleges), such actions, including the fact that the case went to trial and was the subject of considerable motion practice, are not inconsistent with the expectations placed upon a lawyer.

REPORT AND RECOMMENDATION - 42

Indeed, his work would be what any client might expect of his or her attorney and may simply mirror the zealous advocacy that professional standards require of every attorney. Here, a law firm represented a client, when asked, in the defense of a lawsuit brought in another state, including standard steps of litigation and a trial. Such actions do not also mean that the out-of-state attorney must expect to be haled into court in the (to him or her) foreign state in a dispute over whether a fee received for such services was a payment that should have been made against a judgment debt. To require such an end does not, in the Court's view, comport with fair play and due process.

There are circumstances, to be sure, where a law firm providing services in a state other than where it principally does its legal business may be subject to suit, consistent with due process. But it goes too far to say that the act of accepting payment of a fee, on the facts of this case, is such a circumstance. Even though the particular debt for legal services here was satisfied by the transfer of a piece of valuable personal property, the Court sees no distinction in the nature of Wheaton's claim than if Franmar had sold the property first and then used the funds from that sale to pay the law firm. Accordingly, it is recommended that the district court decline to exercise jurisdiction over Hamilton & Faatz.

## I.    Venue

Hamilton & Faatz asserts as an additional basis for dismissal that the Court is "directed to dismiss this action" for improper venue because "all of the defendants reside in the state of Colorado" and the only authorized venue is Colorado. Def. Hamilton & Faatz's Memo., p. 16 (Docket No. 11-3). This argument fails on the facts of this case—all Defendants do not reside in Colorado. Defendants Franklin and Martha Tolbert are residents of Texas, and Defendant

REPORT AND RECOMMENDATION - 43

Tolbert, LLC is a Texas limited liability company with its principal place of business in Nacogdoches, Texas. *See* Franklin Tolbert Aff., ¶ 2 (Docket No. 15-3); Martha Tolbert Aff., ¶ 2 (Docket No. 15-4). Moreover, the Court need not address this argument because the claims against Hamilton & Faatz should be dismissed for lack of personal jurisdiction and none of the other Defendants requested dismissal for lack of improper venue or otherwise moved to transfer venue.

Venue exists in diversity cases in a judicial district (1) where any defendant resides, if all defendants reside in the same State, (2) in which a substantial part of the events or omissions giving rise to the claim occurred, or (3) in which any defendant is subject to personal jurisdiction at the time the action is commenced.[18] 28 U.S.C. § 1391. Because personal jurisdiction is properly exercised over the Tolberts, Franmar, and Tolbert LLC, venue is appropriate in Idaho under section 1391(3). Accordingly, it is recommended that the District Court deny as moot Defendant Hamilton & Faatz's alternative request for dismissal based on alleged improper venue.

## II. RECOMMENDATION

Based on the foregoing, it is recommended that the District Court DENY the motion to dismiss filed by Defendant Franmar, Franklin Tolbert, Martha Tolbert, and Tolbert LLC (Docket No. 15).

---

[18] A defendant over whom personal jurisdiction exists but for whom venue is improper may move for dismissal or transfer under 28 U.S.C. § 1406(a). A defendant for whom venue is proper but inconvenient may move for a change of venue under 28 U.S.C. § 1404(a). *See Muldoon v. Tropitone Furniture Co.*, 1 F.3d 964, 966-67 (9th Cir. 1993).

REPORT AND RECOMMENDATION - 44

It is also recommended that the District Court GRANT Defendant Hamilton & Faatz's Motion to Dismiss (Docket No. 11) for lack of personal jurisdiction, but DENY as moot this Defendant's request for dismissal based on improper venue.

Written objections to this Report and Recommendation must be filed within ten (10) days pursuant to 28 U.S.C. § 636 and District of Idaho Local Civil Rule 72.1. If written objections are not filed within the specified time, the right to raise factual and/or legal objections in the Ninth Circuit Court of Appeals may be waived.

DATED: **February 4, 2009**



Honorable Ronald E. Bush
U. S. Magistrate Judge

REPORT AND RECOMMENDATION - 45